THE MERCHANTS' BANK OF CANADA, RESPONDENT, v. THE UNION RAILROAD AND TRANSPORTATION COMPANY, IMPLEADED WITH THE PACIFIC MAIL STEAMSHIP COMPANY, APPELLANT.

*Several bills of lading — Delivery of goods — the holder of which bill entitled to.*

APPEAL by the defendant from a judgment entered upon a verdict in favor of the plaintiff, by direction of the court.

In February, 1873, the firm of Ritchie, Gregg, Gillespie & Co., merchants, of Montreal, applied by letter to the plaintiff, a banking institution of the same city, for a credit of £10,000 sterling, in favor of their agents, Charles Thorel & Co., at Yokohama. Such credit was to be availed of by the latter by their drafts upon the London agents of the plaintiff, the London Joint-stock Bank, the plaintiff having arranged that the latter should accept such drafts on the hypothecation by the drawers (Thorel & Co.) of the teas purchased by them in Yokohama for Ritchie, Gregg, Gillespie & Co.

Six hundred and seventy-six packages of tea were shipped to New York by Thorel & Co., deliverable to order of shipper, as per bill of lading. The plaintiff's manager testified that the plaintiff procured and made an advance upon the 676 packages of tea mentioned in the bill of lading; that the plaintiff received the bill of lading, invoice and consular certificate from the London Joint-stock Bank, in order that the plaintiff might collect or realize the amount of the invoice, and therewith retire or pay the draft of the shipper, for the payment of which the plaintiff held the bill of lading. He also testified that the plaintiff paid the amount of the draft to the London Joint-stock Bank, retaining the bill as its security for the amount. The bill of lading, however, contained

a statement that the agent of the steamer had signed five bills of lading all of the same tenor and date, one whereof being accomplished, the others were to stand void. Shortly after their arrival in New York by the defendant's conveyance, the defendant delivered the teas to Thomas Rigney & Co., who had one of the bills of lading, upon receiving the written guarantee of that firm, indorsed on their bill of lading, that they would deliver to defendant "*the regular bill* of lading, indorsed for the within teas, so soon as the same reached us."

The court at General Term say : " It is assumed that the title to the teas was in Charles Thorel & Co., and that the mere possession of the unindorsed bill of lading by the plaintiff was not sufficient evidence of the transfer. The point thus taken is ingeniously put and argued, but the authorities do not sanction it. The rule is settled in this State, that the transfer of a bill of lading without indorsement is a symbolical delivery of the goods; that the property in it may be conveyed by such delivery, and be good against all the world except an innocent indorser for a valuable consideration. (*Nathan* v. *Giles*, 5 Taunt., 558 ; *Bank of Rochester* v. *Jones*, 4 N. Y., 497 ; *Cayuga Co. Nat. Bank* v. *Daniels*, 47 id., 631 ; *Marine Bank* v. *Wright*, 48 id., 1 ; *First Nat. Bank of Cincinnati* v. *Kelly*, 57 id., 34 ; *Allen* v. *Williams*, 12 Pick., 302.) It is true that the delivery of the bill must be with intent to pass the title, and that there must be some evidence to sustain that element. The arrangement made with the plaintiff in reference to the advances, provided for the delivery of the bill of lading as a security therefor, and their possession of it, after the advances, and of the invoice and consular certificate, which they also had, made it presumptive evidence that it was delivered for the purpose contemplated. There is no evidence to the contrary. * * *

" The defendants were acting, therefore, with full knowledge and under guarantee. They cannot cut off the plaintiffs, who are *bona fide* holders for value, without notice. The defendants' counsel referred to the case of *Fearn* v. *Bowers* (cited in *Lickbarrow* v. *Mason*, 1 Sm. L. C. [7 Am. ed.], 1162), and to *The Tigress* (Brown & Lush, 43), to sustain the proposition that, where there are several bills of lading, although the title to the property described

goes to the first person to whom one of them is transferred for value, the master is justified in delivering the goods to the holder of the first bill presented.

"The decision in *Fearn* v. *Bowers,* it will be found, is predicated of a usage of trade, which sanctioned the delivery of the goods to any one of several holders that the captain thought proper to select. He was not bound, it was said, to look into the invoice or to consider the merits of different claimants. But that case stands alone, and its doctrine, resting upon usage, is clearly an exception to the general rule governing the relations of the *bona fide* holder of the bill to the carrier. The question was not involved in the case of *The Tigress,* but, so far as it is affirmatory of the case of *Fearn* v. *Bowers,* it rests upon the usage mentioned, to which allusion is made in the case. Here there was no proof of usage, and no offer to prove it.

"It is evident, indeed, that the defendants suspected the right of Thomas Rigney & Co. to receive the property, because they delivered it only upon a guarantee that that firm would give the regular bill of lading, by which was meant the bill only which was entitled to be honored. They took the risk of delivery, and must take the consequences. The cases are not parallel, therefore."

*Ashbel Green,* for the appellant. *A. A. Redfield,* for the respondent.

Opinion by BRADY, J.; DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.